RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 4/16/12

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| VINCENT MICHAEL MARINO,<br>    Plaintiff | CIVIL ACTION<br>SECTION "P"<br>NO. CV11-01904 |
| VERSUS | |
| DEBORAH SCHULT,<br>    Defendants | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 by petitioner Vincent Michael Marino ("Marino") on September 30, 2011. Marino is contesting the loss of 36 days good time credit and the heightening of his security classification by the Bureau of Prisons ("BOP") due to prison disciplinary violations for possession of intoxicants, possession of gambling paraphernalia, and possession of anything not authorized. Marino is imprisoned for convictions in the U.S. District Court for the District of Massachusetts, Worcester Division, of a RICO violation, a RICO conspiracy, and conspiracy to commit murder, for which he was sentenced to a total of 35 years imprisonment. Marino is presently incarcerated in the United States Penitentiary in Pollock, Louisiana ("USP-Pollock").

Marino raises the following grounds for habeas relief in his petition:

    1. DHO Officer Ryan violated Marino's due process rights by precluding Marino from receiving core exculpatory

material evidence at his DHO hearing to prove the critical 10 gallons of "unknown liquid" depicted in the BOP's first incident report (# 1950877) supports the BOP's second incident report (#1951307) issued 2 full days later, which was false, misleading, inaccurate and should be expunged, since Marino was denied an opportunity to confront and refute the evidence.

2. DHO Officer Ryan violated Marino's right to due process and his liberty interest by failing to allow Marino to call witnesses CO/Joe Smith in his defense.

3. DHO Officer Ryan's preclusion to review the critical video tape of Mohawk-B Unit at FCI-Ray Brook in New York, from 8 a.m. through 2 p.m. on December 3, 2009, which data showed the second incident report (# 1951307) dated December 5, 2009 to be inaccurate and false since the 10 gallons of then "unknown liquid" could not have logically turned into intoxicant 2 days later when it did not exist and it was already deemed "unknown liquid" in the first incident report (#1950877) by BOP staff and thus was not available for further testing.

4. BOP/DOJ staff retaliated against Marino when the BOP staff intentionally manipulated Marino's security level points from 11 points (low level security institution) to 24 points (high level security institution), which adversely affects Marino, placing Marino over 500 miles away from his home, and again retaliated against Marino by placing Marino on the "BOP's Diesel Therapy Program" by putting him in transit without his legal mail and legal property from December 3, 2009 to February 12, 2010 through July 13, 2010, so Marino did not receive his legal mail and legal material until August 2010 (eight months).

5. The DHO officer's failure to dismiss the BOP's second incident report (# 1952307) due to untimely service, in violation of Policy Statement 5270.07 Chapter 2, page 3, subsection 1, and CFR 541.11 is refuted by the BOP's first incident report (# 1950877), in violation of Marino's right to due process and liberty interest, since Marino lost 36 days of earned good time credit.

6. The BOP's intentional delay of over 6 months to respond to Marino's BP-11 (#570917-A1) was excessive and required review or dismissal of the second incident report (# 19513077).

2

For relief, Marino asks for the restoration of 36 days good time credits or, in the alternative, for the court to review the December 3, 2009 video tape and conduct an evidentiary hearing. Marino alleges exhaustion of his administrative remedies. Marino is presently incarcerated in the United States Penitentiary in Pollock, Louisiana ("USP-Pollock").

Law and Analysis

Ground No. 4 - Security Classification

Marino contends prison officials at the Federal Correctional Institution in Ray Brook, New York ("FCI-Ray Brook") retaliated against him by changing his security classification from 11 to 24 following his disciplinary proceeding, resulting in his being transferred from FCI-Ray Brook, a medium security prison, to USP-Pollock, a high security prison. Marino alleges the prison officials at FCI-Ray Brook retaliated against him for filing grievances against them after the disciplinary proceedings in which he was found guilty of possession of intoxicants, possession of gambling paraphernalia, and possession of anything not authorized, in December 2009.

Inmates have no protectable property or liberty interest in custodial classifications. Harper v. Showers, 174 F.3d 716, 718 (5th Cir.1999), quoting Whitley v. Hunt, 158 F.3d 882, 889 (5th Cir. 1998). Moreover, Marino does not have a constitutionally protected interest in being assigned to a particular prison

For relief, Marino asks for the restoration of 36 days good time credits or, in the alternative, for the court to review the December 3, 2009 video tape and conduct an evidentiary hearing. Marino alleges exhaustion of his administrative remedies. Marino is presently incarcerated in the United States Penitentiary in Pollock, Louisiana ("USP-Pollock").

Law and Analysis

Ground No. 4 - Security Classification

Marino contends prison officials at the Federal Correctional Institution in Ray Brook, New York ("FCI-Ray Brook") retaliated against him by changing his security classification from 11 to 24 following his disciplinary proceeding, resulting in his being transferred from FCI-Ray Brook, a medium security prison, to USP-Pollock, a high security prison. Marino alleges the prison officials at FCI-Ray Brook retaliated against him for filing grievances against them after his disciplinary proceedings for guilty of possession of intoxicants, possession of gambling paraphernalia, and possession of anything not authorized, in December 2009.

Inmates have no protectable property or liberty interest in custodial classifications. Harper v. Showers, 174 F.3d 716, 718 (5th Cir.1999), quoting Whitley v. Hunt, 158 F.3d 882, 889 (5th Cir. 1998). Moreover, Marino does not have a constitutionally protected interest in being assigned to a particular prison

facility. <u>Tighe v. Wall</u>, 100 F.3d 41, 42 (5th Cir.1996) (per curiam); <u>Biliski v. Harborth</u>, 55 F.3d 160, 162 (5th Cir.1995). Because prison classification is a matter left to the discretion of prison officials, <u>Scott v. FNU New</u>, 387 Fed.Appx. 469 (5th Cir. 2010), and cases cited therein, Marino's claims as to the change in his security classification and his transfer to a higher security prison do not state a claim for the violation of a constitutional right cognizable under Section 2241.

Marino also attempts to state a claim for retaliation, alleging the prison officials at FCI-Ray Brook changed his security classification in retaliation for his having filed grievances concerning his disciplinary proceedings. To state a retaliation claim, a claimant must allege both that the type of activity engaged in was protected under the constitution and that the prison officials impermissibly infringed on this right to engage in the protected activity. <u>Rizzo v. Dawson</u>, 778 F.2d 527, 531 (10th Cir. 1985), citing <u>Owens v. Rush</u>, 654 F.2d 1370 (10th Cir. 1981). Also, <u>Hale v. Townley</u>, 19 F.3d 1068, 1072-73 (5th Cir. 1994); <u>Crowley v. Sinyard</u>, 884 F.2d 804, 812 n.9 (5th Cir. 1989), cert. den., 496 U.S. 924, 110 S.Ct. 2617, 110 L.Ed.2d 638 (1990). A prisoner must allege facts which establish that (1) he exercised a specific constitutional right, (2) the defendant had the intent to retaliate against him for his exercise of that right, (3) a retaliatory adverse act occurred, and (4) causation. Causation requires a

4

showing that "but for the retaliatory motive the complained of incident ... would not have occurred." Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997), cert. denied, 522 U.S. 995 (1997), citing Woods, 60 F.3d at 1166.  The inmate must allege more than his personal belief that he is the victim of retaliation. Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir. 1999).  The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred.  Jones, 188 F.3d at 324-325, citing Woods, 60 F.3d at 1166.  In the case at bar, Marino alleges he was retaliated against for filing grievances after his disciplinary proceedings. However, Marino's prison classification re-evaluation was after both his disciplinary proceedings and his grievances. Since it is more likely that Marino's classification was changed due to his disciplinary violations than due to his having filed grievances, Marino has not alleged fact which show the causation component for a retaliation claim.

This ground for habeas relief is meritless.

Grounds No. 1-3 & 5 - Disciplinary Hearing

Marino challenges the validity of his December 15, 2009 disciplinary proceeding in several respects.

Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply to prison disciplinary proceedings.

5

Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963, 2975 (1974). A failure by prison officials to comply with their own regulations in prison disciplinary proceedings does not state a constitutional claim cognizable on habeas review. Arceneaux v. Young, 369 Fed.Appx. 620 (5th Cir. 2010), citing Jackson v. Cain, 864 F.2d 1235, 1251-52 (5th Cir.1989). However, where a prison disciplinary hearing may result in the loss of good time credits, due process requires: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in the inmate's defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. Superintendent v. Hill, 472 U.S. 445, 454, 105 S.Ct. 2768 (1985). Also, Henson v. U.S. Bureau of Prisons, 213 F.3d 897 (5th Cir. 2000).

These requirements are flexible, however, and must necessarily be balanced against legitimate penological interests. Henson, 213 F.3d at 898. Thus, prison officials can limit the evidence a prisoner presents when they can articulate legitimate reasons for doing so. Henson, 213 F.3d at 898, and cases cited therein. These reasons include assuring the safety of inmates and prisoners, avoiding burdensome administrative requirements that might be susceptible to manipulation, and preserving the disciplinary process as a means of rehabilitation. Henson, 213 F.3d at 898,

citing Hill, 472 U.S. at 455, 105 S.Ct. 2768. The requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. Hill, 472 U.S. at 455, 105 S.Ct. 2768.

1.

Marino contends the DHO officer's failure to dismiss the BOP's second incident report (No. 1952307) due to untimely service, in violation of Policy Statement 5270.07 Chapter 2, page 3, subsection 1, and CFR 541.11 (which is refuted by the BOP's first incident report (No. 1950877)), violated Marino's right to due process and his liberty interest, since Marino lost 36 days of earned good time credit.

Marino did not have a constitutional right to notice within 24 hours, but instead had a constitutional right to advance written notice of the disciplinary charges prior to the disciplinary hearing. Therefore, Marino has not alleged the violation of a constitutional right.

Moreover, Marino's contention that the prison regulations were not complied with is incorrect. The Code of Federal Regulations provides that an inmate will "ordinarily receive the incident report within 24 hours of staff becoming aware of [the inmate's] involvement in the incident." 28 C.F.R. § 541.5. Marino received the first incident report the date of the incident, on December 3, 2009. Marino received the second incident report two days later on

7

December 5, 2009; that report was written by a different officer and notified Marino of all the charges against him. Since Marino received the first incident report within 24 hours of the staff becoming aware of his involvement in the incident, the statute was complied with. Since Marino's hearing was held on December 15, 2009, Marino received both incident reports and notice of the charges against him well in advance of his hearing, and his constitutional right to due process was not violated.

This ground for habeas relief is meritless.

2.

Marino also contends that Disciplinary Hearing Officer ("DHO") Ryan violated Marino's due process rights by precluding Marino from receiving "core exculpatory material evidence" at his DHO hearing to prove the critical 10 gallons of "unknown liquid" depicted in the BOP's first incident report (# 1950877) supports the BOP's second incident report (#1951307) issued 2 full days later. Marino contends the second incident report was false, misleading, inaccurate and should be expunged, since Marino was denied an opportunity to confront and refute the evidence. Marino contends the liquid was "spilled" and not taken into evidence, so it was not tested for alcohol. Marino further contends DHO Ryan violated Marino's right to due process and his liberty interest by failing to allow Marino to call Corrections Officer Joe Smith as a witness in his defense.

8

The documentary evidence shows that Officer Joe Smith tested the liquid, at the site where it was found, with an Alco-sensor 3 device and the liquid had a reading of "high" for alcohol (Doc. 10).[1] Afterward, the liquid was disposed of; according to Marino it was "spilled" on the common area floor. At the hearing, it was noted that Marino called Officer Joe Smith, who did not appear, so Marino waived his right to confront Officer Joe Smith and Smith's written memorandum was submitted to the Disciplinary Hearing board (Doc. 1, Ex.-DHO Report).

Marino has not submitted any evidence to show that the second incident report, written by Officer Poirier and stating the liquid found in Marino's cell wall was alcoholic, was false; Marino's self-serving statement that the liquid was not alcoholic are insufficient. Officer Smith's memorandum constitutes "some evidence" to support the Disciplinary Hearing board's finding that Marino possessed an intoxicant in prison. Marino's right to due process was not violated at this hearing by the fact that he was not allowed to test the liquid, or by the fact that Officer Smith was not present at the hearing since Marino decided to proceed without him.

This ground for relief is also meritless.

---

[1] Although Officer Smith's memorandum is not in the record before this court, the DHO Report, as well as a response to Marino's appeal, signed by Regional Director J.D. Norwood, provide information about Officer Smith's test for alcohol (Doc. 10, Exs.).

3.

Marino also argues that DHO Ryan erred in not reviewing the "critical video tape" of Mohawk-B Unit at FCI-Ray Brook in New York, from 8 a.m. through 2 p.m. on December 3, 2009, which showed the second incident report (# 1951307) dated December 5, 2009 to be inaccurate and false since the 10 gallons of then "unknown liquid" could not have logically turned into intoxicant 2 days later when it did not exist and thus was not available for further testing, and it the liquid had already been deemed an "unknown liquid" in the first incident report (#1950877) by BOP staff. Apparently, the video shows all of the liquid being spilled in the common area.

Whether or not the ten gallons of liquid found in Marino's cell was spilled after it was removed from his cell is irrelevant to this habeas petition. According to the documentary evidence, the liquid was tested by Officer Smith while it was still in Marino's cell and found to contain alcohol (Doc. 10, Ex.); Officer Smith's report as to the test result was submitted to Marino's disciplinary hearing board. Marino's right to due process was not violated at his prison disciplinary proceeding by the fact that he was not afforded the opportunity to subject the liquid to further testing.

This ground for relief is meritless.

Ground No. 6 - Delayed Responses to Grievances

Marino contends the BOP took up to six months to respond to

his grievances, which is longer than the time allowed by the BOP's procedures.

There is no constitutional right to an administrative remedy procedure. <u>Arvie v. Stalder</u>, 53 F.3d 702, 704-5 (5th Cir. 1995), and cases cited therein; <u>Shah v. Quinlin</u>, 901 F.2d 1241, 1243 n.2 (5th Cir. 1990). Therefore, Marino's claim that some of the BOP's responses to his grievances were untimely does not state a habeas claim for the denial of a constitutional right.

In any event, 28 C.F.R. § 542.18 provides that if the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level. Therefore, Marino could have noted the lack of a timely response on his form and filed a grievance at the next level of the administrative remedy process.

This ground for relief is meritless.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Marino's Section 2241 habeas petition be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served

11

with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 16th day of April 2012.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE